Case number 14-4063 and 23-3847. Juan Kinley versus Margaret Bradshaw. Argument is not to exceed 30 minutes per side. Mr. Avellano, you may proceed for the appellant. Thank you. May it please the court. Andrew Avellano on behalf of Petitioner Appellant Juan Kinley. Before I begin into the meat of my arguments, I'd like to give the court an introduction of our case. This is a case about betrayal. It's a betrayal of the rule of law by men who felt that they were entitled to violate the constitutional rights of Mr. Kinley. He was betrayed by Donald Merriman, the government's star witness, by the Clark County Prosecutor's Office, the Clark County Public Defender's Office, by the presiding judge, unfortunately, and by private appointed counsel. The case is really quite simple as it relates to first and second grounds for relief. Kinley was convicted and sentenced to death largely on the basis of lies and perjured testimony. And the case comes down to a factual finding about the credibility of Donald Merriman's recantation. There is only one credibility determination that was made by the State Court of Appeals as it related to the first post-conviction proceeding. But that credibility determination was made without the evidence of Donald Merriman's deposition. The evidence in that deposition clearly established that the recantation was credible, which would overcome the State Court's credibility determination. And then finally, as it relates to the other claims in our case, we believe that relief can be granted on one or more of those because Kinley was convicted and sentenced to death without effective conflict-free counsel after an invalid waiver of his jury trial right. Now, as it relates to our first argument, as the Court is aware, confession evidence is extremely consequential and influential on the fact finder. Donald Merriman lied. He perjured his testimony. Isn't the problem that we don't know when he lied? No, I think that goes to the credibility issue. And because the only credibility determination made by the State Court did not include his deposition testimony, I think that's why I think that on that basis, the Court has more than enough to order the granting of the writ. That first credibility determination, I believe the Court of Appeals said that the trial court could have ruled either way, could have ruled either way. But without being able to see Merriman in court, the ball bounced in favor of the government. But then the State Courts refused to consider the content of the deposition and correct me if I'm wrong, refused to consider the content of the deposition saying that it was filed too late. Is that correct? Correct. So are we bound by any factual determination by the State Courts under these circumstances? Well, it depends on which set of facts we're talking about. Because the first set of facts, the factual determinations as to the credibility of Merriman was the Court of Appeals after that first post-conviction proceeding. In the second post-conviction proceeding where post-conviction counsel tried to prevent Merriman's deposition, the Court said it didn't have jurisdiction. And based on this Court's precedent and reading based on the Ohio Supreme Court's statements of its own laws, if there's a lack of jurisdiction, then nothing that the Court of Appeals has to say about the facts or the credibility of Merriman is relevant in this Court's determination. How does 2254E impact your argument? It does not, fortunately, because if there's no jurisdiction for the State Court to make those credibility determinations or those factual determinations, then we proceed under pre-EDPA law, which is de novo on the law and facts if there's a mixed question of law and facts. And I think this case is sort of the poster child for a mixture of law and facts. Didn't, and again, correct me if I'm wrong, didn't 2254E exist prior to EDPA? And it says a determination of a factual issue made by a State Court shall be presumed to be correct and that the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. It did. It did. But that's only if the State Court made a factual determination. And they didn't because they didn't have jurisdiction to make the determination. Well, they made a determination prior to the deposition evidence. And you're saying now, because there's a deposition, it's not finding. Absolutely. Right. Absolutely. But the deposition still exists and that evidence clearly supports the conclusion that Merriman not only lied when he said that the defendant confessed and in quite a monstrous way, but also that he didn't have, he cut no deals with the prosecutors in exchange for that testimony. So what about the argument that Mr. Kinley's due process rights were not violated if at the time Merriman's testimony was offered, the prosecution at that time did not know that he was or could have been lying at that time. And consequently, there was no violation at the trial of due process rights. And there would not have been as it related to the substance of his alleging that there was a confession. But there was a violation of his due process rights because the government knew that he had cut a deal and he testified, hey, they didn't offer me anything for my testimony. I did it because it was the right thing to do. And I know that they don't give any deals. And the government emphasized that in closing argument to say, look, judges, he came forward out of the goodness of his own heart. He had nothing to gain as a result of testifying against Mr. Kinley. That's where the due process violation occurs in the first instant. There's no indication that the prosecutors knew that Kinley was lying at the time about this alleged confession. Does that answer your question, Josh? So far as it goes, yes. All right. I mean, go ahead. So what's the best evidence that you have that the prosecutors knew that Merriman lied when he said there were no deals cut? Well, I think the best evidence is Merriman's under oath testimony subject to cross-examination. The deposition, again, you're going back to the deposition. That's right. That's right. I think that's the best evidence. Yeah. And as a follow-up judge, we have the transcript of Merriman's sentencing from May of 1991, where the assistant prosecutor, I believe Davis, said, well, you know, Judge, I was kind of upset that he didn't show up for six months or a year with six months suspended and probation for six months, if he testified or in exchange for his testimony. So that would be the second tier. That statement, to me, is somewhat ambiguous as to whether the deal was made before or after his sentencing. I can help. His plea was before the trial. He was supposed to be sentenced before the trial. He didn't show up for sentencing. And then he shows up to testify. They don't issue a capious, they don't arrest him on the spot after he's done testifying, and they let him hang out in the breeze until May. And the deal was cut prior to trial, prior to the testimony, with the explicit understanding with defense counsel for Merriman that he would get, that the government would request favorable treatment in exchange. So did his defense counsel testify? I'm sorry? Do you have an affidavit from his defense counsel? As it relates to what question, Judge? From Merriman's defense counsel as to the plea agreement. Well, we have something better. We have the on-the-record statement from the state's attorney that there was a deal. And that deal was explicitly based on his testimony, his anticipated testimony. So that's our second- Well, the word anticipated doesn't appear in the transcript. I've looked at what you're talking, what you're referring to. I find it somewhat ambiguous as to when- I'm going to grab the, my, because the quote from the prosecutor on the record is, Judge, we, I feel compelled, I feel duty-bound to stick to the recommendation that we had previously entered in, that we had previously talked about and promised Mr. Merriman in exchange for his testimony. Because he testified in, at the trial, we feel like we have to continue to stick by our recommendation because that's what the exchange was. And I'm trying to find it here, but I did quote it in our brief. Who is the counsel that you're, the prosecutor? Is this Darnell Carter? Yes, yes. I just found it. Or he says, it's on page 22 of our brief, which is page 31 on the court's record. He says, Mr. Carter, and that's the prosecutor, he says, the defendant testified in State v. Kinley, Juan Kinley, and at the time conferred with Mr. Merrill, who was his defense counsel, who was representing him at the time, that the state, in exchange for his entering a guilty plea and for consideration of his testimony in the Merriman case, we would recommend probation in this matter. Just to follow up what Judge White was asking regarding Merriman's sentencing proceeding, when it was said that the Merriman agreed to testify or there was some sort of agreed upon arrangement for his testimony, that statement by the prosecutor does not indicate what the nature of the testimony was that was supposed to be provided. And it's hard to tell from what was said whether the prosecutor was showing appreciation for Mr. Merriman testifying or whether he was showing appreciation for the content of the testimony. In other words, we don't know if the prosecutor was referring to testimony concerning the confession of the alleged confession of Mr. Kinley or some other impriminating statement or what was being referred to there, simply that maybe Merriman was willing to testify at all. How do we know what the prosecutor was talking about there? That's a good question, Judge. And I think it's very, very clear from all the surrounding circumstances that the only thing they needed from Donald Merriman was for him to tell the fact finder that the defendant charged with double murder confessed to that murder and did so in a way that was showing a lack of remorse and perhaps worthy of a death sentence. It all boils down to Merriman's credibility. And if you can't attack his credibility because you don't know that he's cut a deal with the government in exchange for that testimony, he didn't testify about anything else. He said, this guy confessed to me that he killed his and her son. What other reason was there for him to testify? That was it. And then the question becomes for the state court, finder of fact, either at the PC post-conviction hearing or for the Court of Appeals reviewing that first hearing is, okay, well, Merriman had these two affidavits that were presented that said, hey, I lied. That never happened. Oh, and by the way, when I testified that I didn't get anything in return for that, yeah, I lied about that too, because I did. And these statements from Mr. Carter, I think, pin that down very substantially. In fact, Carter goes on to say, I feel compelled to restate the recommendation because I think I'm duty-bound to do so. He did enter a plea and he did testify in Kinley's case. And again, that plea agreement happened before he testified in Kinley's case. So he did receive consideration. Wait, tell me, counsel, you say that happened before he testified, but this transcript was after he testified. It may be a sort of a rather subtle difference, but I think there is a difference between you have a situation where someone's in jail, they have a bunch of pending the possibility of something, right? You say, well, I don't know. I'd have to see you testify to know whether there's any consideration to be given. And then after the person testifies, you speak to his lawyer and you go, yeah, I haven't plead guilty. He did testify. I'm going to give you a break. The reason there is no ambiguity about that is that Carter himself testifies that it all happened. The agreement was struck and they said that we will recommend this lighter sentence if you testify against Kinley. Now, for the uninitiated, if Kinley were to have gotten on the stand and said, oh, I don't really recall, they could pull that deal from him. I'm sorry. Where does that come from? When you make that assertion that the deal happened before he testified, are you talking about the sentencing transcript or are you talking about Merriman's? I'm talking about both. The best evidence, the best evidence is Merriman's testimony subject to perjury, right? So he was never charged with perjury. And? Well, he was subject to perjury when he testified at the trial. I know, but he testified at trial because he wanted to get himself a deal. And he said that in his deposition. And the reason we know what the contents of the agreement was, and this isn't just one deal. OK, this is the second deal. OK, so on this second deal, we know what the terms were based on what the government admitted at his sentencing hearing, at Merriman's sentencing hearing. And there is one information about what the government said at the Merriman sentencing before you took Merriman's deposition. I was not counsel for, you know, on those post-conviction proceedings. I suppose that they could have. I suppose they could have. But the fact remains. So then is there a due diligence problem for Kinley counsel? Why not? No, because the government waived any cause or prejudice arguments. They've not raised that as a defense. It was. And the other thing, too, is that the state court of appeals said they didn't have jurisdiction to consider this. So it was presented. They were given an opportunity to rule on it. They didn't. And now we have this before, you know, before the district court and now before this court, where the court is now allowed to make a de novo review of the law and the facts. And in the worst case scenario, de novo review of the law and review of the facts for clear error, because there was no merits ruling by the state courts as it related to Merriman's deposition where, you know, that's where all the good stuff. But OK, but the. The post conviction trial court. Was given those depositions on a subsequent motion. And said that they're cumulative and they're late. Is that right? Correct. Yeah, and so they had no jurisdiction to make any fact findings as it related to the to the deposition because they lack the jurisdiction. And this this court has I think it was in gum where where Judge Cole or Judge White and Judge Moore were on that panel in the gum case. And gum stays clearly. The Ohio Supreme Court itself has said very clearly that if you fail to meet the requirements of 29, 53, 23. We have no jurisdiction and so anything we say is just. Can't be considered. Let me ask you this council. What are we as a court to do if we look at this? Entire record and we decide that Mr. Merriman is. Totally lacking in credibility and we can't tell if he was fabricating at the trial or if he was subsequently fabricating or lying when he submitted this affidavit in 2006. And yet we look at the. Overwhelming. Quantum of evidence that Mr. McKinley actually. Even though it's circumstantial evidence, lots of evidence that he actually committed the crime. In other words, the machete was or machete that looked like the one that was used. Was taken from the house that was owned by the. Person who had employed the victim. Seminar same machete found behind Mr. Kenley's house. The son's. Blood the DNA of the sun supposedly was on Mr. Kenley's jacket. Mr. Kenley had been seen in the neighborhood where the crime was committed on the same day. Of the crime. Mr. Kenley had repeatedly threatened to kill the. The woman who was who was murdered. Lots of them and actually there's more evidence circumstantially even than those kinds of things. So. If if we discount Mr. Merritt, the truth and veracity of Merriman's testimony. Yet there's still this overwhelming. Volume of evidence against your client. How are we to? Assess this situation is. Are you saying that there's a structural constitutional error that we have to abide by and. Afford a habeas relief, no matter what, or how do we look at this overarching situation? I like your argument, Josh. Well, there's 3 other. There are 3 other arguments in our case and they go to the fundamentals of a fair trial. Whether or not he had properly waived his right to a jury. In light of the fact that his trial counsel did not disclose to him. Why they wanted him to waive the jury jury trial. We've got. The other the other. For my answer, we conflict conflict of interest and. I'm sorry, go ahead. No, I was just going to say that we have carefully read your briefs. Both sides and we know your various arguments. And I see that the red light is on. So if you have a targeted response to judge clay, that's fine. Otherwise, I think. Your basic point is that the testimony of Merriman was so important that. This other evidence, which is not direct evidence is not persuasive, I guess. And not only not only that judge, but also when there are significant structural constitutional violations, the independent of the strength of the circumstantial evidence. He deserves a new trial because, yeah, thank you. Thank you. You'll have your full rebuttal time. We'll hear from the state. Thank you may please the court. Charles L. Whitley, assistant attorney general arguing on behalf of the board. Your honors, the warden's position at bottom is pretty straightforward here. It's long been recognized that recantation a witness's recantation of sworn testimony is subject to great suspicion. During review and understandably so, because when a witness recants, the witness is admitting that I did have the capacity to lie under oath. Now, as the copious and very thorough review of the district court of the case law indicates. For that reason, there must be compelling, compelling reasons to accept a recantation and to believe it. Well, in this case, not only is there no compelling reasons, but there's, there's numerous reasons to show that the recantation was not credible. Well, what about the specific issue about whether there was a deal between the prosecution and Merriman ahead of time that would have been important information for Merriman to disclose and for the state prosecutor to disclose? Yes, four points on that, your honor. First, in the transcript of the trial itself, on cross-examination, the defense brought out the pending charges against Mr. Merriman, brought those out, argued that he expected a deal or he expected, he was testifying to, to receive a benefit or a deal. Merriman denied that. However, it was very plain in the record that the defense was well aware of the pending charges and unrelated charges against Mr. Merriman. Secondly, there were two groups of charges. One was a group of forgery charges. A second group involved theft. Now, by the time that Merriman testified, the first group of charges had already been disposed of and he had already served a sentence. So, if indeed the state was giving him a deal, they certainly were very trustworthy in letting him get his sentencing break before he actually testified. Now- On the forgery, was that the one where there were like five charge, five forgery charges and some of them were dismissed? Were they dismissed with or without prejudice? They were dismissed. I believe they were dismissed with prejudice, but the remaining charges, there was, he received a sentence of, I think, I believe it was a year. But he served, whatever he got, he actually had served it by the time that he testified at Mr. Kennelly's trial. Now, as to the second part, it's interesting that when Mr. Merriman came to be sentenced, he didn't show up. Now, the prosecutor was going to recommend had he showed up, I think it was a six-month sentence, but he didn't show up. Now, the dialogue that opposing counsel was referring to by the prosecutor, that was in reference to whether the prosecutor felt that he should continue his recommendation, even though Mr. Merriman did not show up for his sentencing. He decided he would do that. He decided he would do that because, yes, Merriman had testified, but this was not any, there was no prearranged deal here. There's nothing in the record that showed up. What about these statements that your opponent read to us? For consideration of his testimony in the Kennelly case, we recommend probation. And then later on, I feel compelled to restate the recommendation because I think that I'm bound to do so. He did enter the plea and he did testify in the Kennelly case. Doesn't that imply that there was a deal? No, Your Honor. Why not? Because in this context, we have to remember that he was speaking after Mr. Merriman didn't show up for initial sentencing. What he was saying there was that, yes, after Mr. Merriman testified, okay, he did testify for the state, he did cooperate with the state, and we were going to give him a sentencing recommendation. The fact that he didn't show up for sentencing didn't change that. Yeah, but doesn't that show that there was a deal? Doesn't that show there was a deal that he would get the six months in the theft charges if he testified against Kennelly? No, Your Honor. With respect, what that shows in the context is after he did testify, then the state decided that, yes, he was deserving of a sentencing break because he did testify. That didn't change because Mr. Merriman didn't show up for his sentencing. That's the context of that statement. If you read the statement very carefully, it doesn't say, oh, because we promised him before he testified that we would recommend probate. It doesn't say that. It doesn't say that at all. I'm sorry. Had he pled guilty before the trial, before he testified? I don't, offhand, Your Honor, I can't recall. I can't recall whether the record says he did, but I do believe that it was clear from the record that what the prosecutor was referring to in those instances was should we still give him sentencing consideration even though he didn't show up for his initial sentence? Well, I mean, that's clear. That's clear from the transcript. But it doesn't address the question whether the agreement, whether the sentencing agreement was before or after he testified. In this matter, the prosecutors testified under oath in post-conviction that there was no agreement. So when the issue was raised in post-conviction, the prosecutors were adamant that there was no deal, that they did not promise him anything. Now, it's interesting to note that in the post-conviction hearing, Mr. Merriman, after giving two affidavits in which he recants his trial testimony, doesn't show up for the evidentiary hearing in post-conviction, even though the record is clear that he was aware of the hearing, he was aware that Mr. Kinley's post-conviction counsel wanted his testimony, desired that he testify, and yet he did not show up. Now, in his deposition, Mr. Merriman really couldn't explain why he didn't show up. He said something like, well, I was afraid of perjury, but as the district court pointed out, well, he could have been, when he swore under oath in two affidavits, he could have been worried about perjury then as well. Well, is it defendant's, I mean, is it defendant's fault that he couldn't get this deposition earlier? No, what I'm saying, Your Honor, is that he was aware. You're saying Merriman is unreliable. Yeah, he was aware of it, and the question begs the question, why didn't he show up? Now, he says, well, I did this because it was the right thing to do. I'm going to, I'm referring now to recanting his testimony, that's the right thing. And yet, of course, the record shows, as the district judge pointed out, that Mr. Merriman didn't go to Mr. Kennelly's post-conviction counsel and volunteer that, hey, I had to change the heart. I testified falsely, and I want to get it off my chest. No, they had to track him down. They got the, they drafted his two affidavits. Incidentally, in the second affidavit, it refers to the advice of Mr. Kennelly's post-conviction counsel that maybe he should have been representational. Well, in his deposition, Mr. Merriman conveniently forgot about that. And he had to be reminded that, yes, yes, he had been advised. His affidavit indicates he had been advised. Also, it's interesting to note that in his deposition, Mr. Merriman says, I never talked to the prosecutors about a deal directly. He says that repeatedly. He says, oh, it was all arranged by my defense attorney. That's who made the deal. I knew my defense attorney was making the deal. Well, I would suggest, Your Honor, that that would be a very extreme situation where not only does a witness arrange to falsely testify, he does it through his lawyer. He does it through his public defender lawyer. So I would suggest, Your Honor, that again raises serious credibility concerns about Mr. Merriman's story. As I said, we talked about before the deal. In fact, he actually was sentenced with respect to the initial group of charges before it served his time, before he actually testified. In addition, of course, the second thing that we look to is, you might say, corroboration. Now, it's typically when a person confesses, the law looks for some corroboration. Well, the gist of Mr. Merriman's testimony was that Kenley admitted he killed Mrs. Miller and her son. Look at the evidence that corroborates that. As the court previously noted, he assaulted her and threatened her before that evidence was presented. Circumstantial evidence. Blood on his jacket. DNA testing indicated it was from David's. It was David's blood. The steering wheel of his mother's car, which witnesses said was seen in the area of the murder, was bloody. The machete, which was consistent with the horrible wounds that the victim suffered, was found in an alley behind Kenley's house. Is this going to an argument that if there's error, it was harmless error? Is that what you're suggesting? Actually, Your Honor, that is also. First, I'm saying that if you want to look at the credibility of the recantation, you have to look at the credibility of the trial testimony. It was credible in the sense that it did. There was plenty of evidence that Kenley indeed committed these murders. Now, it is true that, yes, if you wanted to, you could also say that no question, there was no substantial and injurious impact on the verdict of the three-judge panel, given the overwhelming circumstantial evidence of guilt here. That's certainly, yes, that's certainly a possible thing that should be pointed out. I'm curious about the deposition testimony and then the attachment of the materials that your opposing counsel has relied on heavily. What standard do you think we should apply in deciding how much weight, if any, to give to the deposition and the attachment? I would say very little weight, given the content of the deposition and the things that were stated in there. Under habeas law, what would you point us to? Either a case from the Supreme Court or a statutory provision? I was trying to look at 2254E1, but I'm curious what you think is the governing principle that we would be applying and evaluating the deposition. As the district court pointed out correctly, we believe, the number one criteria is the statutory presumption of correctness. Now, opposing counsel says, but wait a second, you can't apply that because the court of appeals in the second post-conviction action found a lack of jurisdiction. As the district judge pointed out, there's nothing in the statute that requires a presumption of correctness that makes that exception. So, which part of 2254 are you saying is governing here? I'm saying provision with respect to the presumption of correction. The presumption that state court factual findings are presumed correct. So, that's 2254E1, is that it? I believe so, yes, Your Honor. I will say this, Your Honor, that contrary to honorable counsel's arguments, the court of appeals in the second post-conviction action explicitly addressed Merriman's affidavit. They explicitly, in paragraph 17 of the opinion, explicitly noted the trial court's finding that the deposition was cumulative. Now, in terms of jurisdiction, jurisdiction, Your Honor, can be a question of law, a mixed question of law and fact. Here, the court made a factual finding in reaching a decision that lacked jurisdiction because Kinley had not satisfied Ohio's post-conviction, made a factual finding that that affidavit was cumulative, or that deposition was cumulative. There's nothing in the habeas corpus law that says that factual findings made in conjunction with a jurisdictional holding somehow does not have a presumption of correctness. As a matter of fact, as Your Honor can imagine, there are many, many situations where jurisdiction depends on the fact and requires a factual finding. So, did the jurisdictional ruling of the Ohio Court of Appeals depend on the factual finding that the deposition was cumulative? Yes, because what they mentioned was that under Ohio statute, there are some exceptions if the evidence, or you could not have discovered the evidence or discovered the facts in support of your second petition earlier. And that was a necessary finding to all that he did not meet, Kinley did not meet the requirements for a second or successive post-conviction petition under Ohio law. Again, it is noteworthy that the Ohio Court of Appeals did state that, yes, we considered that, we've read that deposition, which indicates that they thought it was a necessary, something necessary to do in reaching their ultimate holding, that there was no jurisdiction. In terms of the deal that we were talking about here, prosecutors have stated under oath there was no deal. Now, the circumstances were such that, again, it's not clear at all that in any way, that the prosecutors in any way even suggested that he should testify falsely. There's absolutely no evidence in this record that the prosecutor had any reason to think that Donald Merriman was not telling the truth when he said that he had a discussion. But I don't think that your opponent is arguing that the prosecutors suggested that Merriman should testify falsely. I think their suggestion is that it should have been revealed to the three-judge panel that there was a deal. Your opponent contends there was a deal for Merriman to get a reduced sentence or have consideration for a reduced sentence if he testified against Kinley. Yes, Your Honor, that is his focus today. Mr. Kinley's focus, he shifted his argument to, in essence, what you would say a Brady versus Maryland violation. But that was not what he raised in state court. That was not what he raised at the district court. Did he raise a Napoli argument, though, below? And why is this argument now so different from that? Well, Your Honor, there are two fundamental differences. First of all, in a Brady situation, of course, you must show that the prosecutor withheld exculpatory evidence. And that's the basic, that's the due process violation. But I thought the argument that he's been making all along is that when Merriman testified that there was no deal, that the prosecutor should have revealed that there was an agreement ahead of time, that good things could happen to Merriman if he testified. With respect, Your Honor, he argued all along that Merriman lied when he said there was no deal, when he lied. But he never said, oh, by the way, the fact that the prosecutor knew he lied and didn't tell me violated my rights. That is not, I looked at the record very thoroughly. I could not find anywhere where the district court even suggested that was raised. Or I couldn't really find anywhere where he that Brady versus Maryland and withholding suppressing evidence was considered to be the, you know, the gist of or important aspect of the claim. The long and short of it is that he has maintained consistently that Merriman lied. His testimony was false. And to substantiate relief on that claim, of course, he has to have compelling evidence that the testimony was false. But he also has to show that the prosecutor had reason to believe that it was false. And hypothetically, hypothetically, if the prosecutor, one of these four prosecutors that are mentioned by name, if one of them had made a deal with Merriman and Merriman testifies at Kinley's trial, oh, there's no deal. I know prosecutors don't make deals. Would there be a duty on the part of the prosecutor at that point to reveal a through cross-exam of or redirect Merriman to reveal that there was a deal or to show that there wasn't a deal? Is there any burden apart from Brady on the prosecution in your view? No, Your Honor. I think Brady covers it. I think Brady is, if you're talking about the failure to reveal a deal with a prosecution witness as a violation of due process, you're talking Brady versus Merriman. I think you can distinguish that type of claim versus a claim of false testimony. False testimony, I think there is a clear legal distinction between the two. And again, who's to say which is a tougher claim to show? I mean, arguably you could say maybe Brady is because it requires a reasonable probability of a different result, or you could say that perhaps the false evidence claim is tougher because it requires you to prove that the prosecutor actually knew the testimony was  But in any event, what I think is clear from the record that the gist of the claim here was false testimony. The gist of the claim was not, oh, well, somehow the prosecutor failed to reveal the potentially exculpatory evidence that there was a deal. Now, of course, again, prosecutors of all, they've all sworn under oath that there was no such deal. Four prosecutors also swore under oath that Mr. Merriman told them when they confronted him in post-conviction with his affidavits, Mr. Merriman said to him, oh, no, my trial testimony was true. I felt some pressure. I felt some pressure from Mr. Kimmel, his post-conviction counsel, that maybe I could help him out. I mean, he's been sentenced to death. Do I really want a man to be sentenced to death who may be innocent? And those four prosecutors testified that Mr. Merriman said flat out, no, my affidavits were true. Now, this, of course, is supported by Mr. Merriman's failure to show up at the evidentiary hearing in state court. That strongly suggests that he did not wish to be confronted with cross-examination with respect to his claim that his testimony was false. Then why does he subject himself to a deposition where he can be cross-examined? Your Honor, it's hard to say what was going through his mind. But what we can say is this, that there's no indication whatsoever that somehow he all along was felt that he should correct his errors, and all along he felt that he should come forward and admit that he lied. Again, if you look at the deposition, now, I have to say this, that these are many years that passed. So to a certain extent, when a person has a hard time remembering things after so many years, you can't attribute that to some kind of deceit. I mean, it's reasonable that he might have been confused. But what is clear from the record is that he never really explained why he decided to not go to that evidentiary hearing. Why did he decide that, oh, those prosecutors are lying? I believe it was suggested somewhere along the line, he was just afraid the prosecutors were going to charge him with torture. Maybe he was, but he didn't say that. In his deposition, he didn't say, well, I was afraid they were going to. He said, no, I never told them that. I never said that my testimony. I just want to go back to something. You said the reason the Court of Appeals found no jurisdiction on the second post-conviction go-around was because they concluded it was cumulative. Was there also a determination that it was late, that too much time had passed? Well, I think, Your Honor, it's all rolled into the statutory requirement. An exception is that if you can show that your claim is based on an allegation which you could not have discovered previously with diligence. In other words, your claim in your second petition is a claim that you could not have brought in your first petition because you basically didn't know about it and didn't discover it until later. Well, clearly here, that's not the case. The fact that Merriman's deposition, pretty self-evidently, did not give rise to a new claim that could not have been previously presented in the first petition. As a matter of fact, as the trial court and the Court of Appeals noted, it's the same claim. As a matter of fact, the deposition is pretty much cumulative, which is accurate. If you look at his deposition, he basically says, yeah, I signed some affidavits that said my trial testimony was false, and yeah, those affidavits were correct. My trial testimony was false. And that's pretty much all he said in the deposition. And again- Okay, so when defendant tried to do that, Merriman disappeared, right? Merriman just did not show up at the evidentiary hearing in state court. Right, but he also said- He made himself absent. Right, but I think he also later made it clear that he did not want to be found, that he was hiding, basically. So how was the defendant supposed to get and present this testimony? The defendant already knew and had managed to get Mr. Merriman to make two affidavits. The defense already- they specifically advised him and had every expectation that he would appear to testify. The fact that- I'm not suggesting, Your Honor, that somehow defense attorneys were at fault for not presenting Mr. Merriman's testimony. What I'm arguing is the fact that Mr. Merriman chose not to testify under oath is a strong indication that his recantation is unbelievable, and he did not wish to subject himself to cross-examination at a hearing. He also knew, I'm sure, that the prosecutors were going to testify that he indeed recanted his recantation. And I'm sure he was aware of that, too. If we conclude that this information was deliberately and wrongfully withheld, what standard do we use for prejudice, and what case are you relying on? When you say- Your Honor, may I ask, are you saying disinformation? You mean- A deal. You mean the information that there was a deal? Yeah. Okay. That would be considered a violation of Brady v. Maryland, or due process as construed by Brady v. Maryland. Mr. Kennedy would have to show not only that the information was exculpatory, which, given that it's impeachment, probably would qualify, but he also has to show there would be a reasonable probability of a different result had the deal been revealed. That would seem to be a very high burden, maybe an impossible burden to meet here, considering, first, the three-judge panel listened to cross-examination, where the defense attorney was aware of these pending charges and suggested, argued, that there was an inference here that Merriman was testified to get a benefit in his pending charges. Secondly, one would have to be very difficult to overcome. While I believe, as the district judge in the Court of Appeals noted, you can't say it didn't have some effect, Merriman's testimony, but considering the overwhelming circumstantial evidence that was presented to the three-judge panel, it is very reasonable and fair to say that it couldn't have made a difference. In the end, you could really come down to where you might say, well, whether he was telling the truth or not, was Merriman telling the truth when he said that Kenley confessed to the murders? Maybe, maybe not, but how do you explain the bloody machete in the alley behind his house? How do you explain David Miller's blood on his jacket? How do you explain the blood on the steering wheel? How do you explain all the witnesses? And your time, your time is well expired, so. Oh, thank you. I apologize, Your Honor. No, we're, I've let both sides, let both sides go over, so. Yeah, it is when you get going, so. It's time. Thank you, Your Honors, and we would ask that you affirm the judgment of the district court. Thank you. We have rebuttal time with no extra time. Your mute is on, yeah. Thank you, Judge. Thank you so much. The first thing that counsel for the Attorney General said that there's, that recantations, you know, that that's, you know, they're highly suspect. And in fact, that is not the case. There is no, there's no case law that says definitively that that is the case. And on page 49 and 50 of our brief, being page 58 and 59 of our, of the court's docket, we go through that as it relates to recantation testimony being viewed with great suspicion. There really is no foundation for that declaration. And in fact, the Supreme Court in Craig v. North Carolina, 1987, Justice Brennan said that in a death case, the court may not reject recantation of critical testimony without giving a specific explanation of what it is about the recantation that warrants a conclusion that it is not credible. And that in light of the fact that the only court to give a credibility determination that is before this court, which is the first court of appeals decision and the first post-conviction, was that that court said, you know, this could have gone either way. This credibility determination could have gone either way. So with that in place, I think we can say that the Attorney General is mistaken. Then in addition, he indicated that he didn't say why he didn't show up for the deposition. He didn't show up because he said he was afraid of being prosecuted for perjury. Government also indicates that there's no other reason to explain, well, we don't know what was in his head. Why did he do this? Why did he go to the deposition? Because he specifically stated that he had been saved in the church and that he knew that what he did was wrong and he had to get right with God. Then also, the evidence is absolutely clear that the defense counsel, post-conviction defense counsel, did not seek out Merriman for the reason to pressure him. It was standard procedure to do a post-conviction proceeding and that penalty case in Ohio, they did that and Merriman was the one who blurted out that didn't happen. The testimony of counsel Sanford was, what do you mean that didn't happen? I'm here to talk to you about whether or not there was a conflict between your attorneys at the county public defender's office. He said, no, no, no, no. What I mean is I lied. So the trial court's indication or accusation that counsel Sanford somehow bullied him into or created this imperative is absolutely not supported by the record. He pled guilty before he testified. I think that was one of the questions that Judge White had proposed. He did plead guilty before he testified at Merriman's trial and that was for the second deal. The first deal was such that they could have brought those charges back. They were dismissed with a nollie pro sequoia, which means, yeah, we're dismissing them, but we're not dismissing them with prejudice. So if he had gone back, they could have revived those charges. Is that the forgeries? Are you referring to the forgeries there? Yes, yes. There were six. There were six forgeries. They dropped two of them and they recommended a one-year sentence with six months suspended, if I remember correctly. So also, Merriman's not going to tell his lawyer, okay, the deals were cut with his lawyer. That was part of the government's argument there, right? Yeah, that's totally standard. That's normal. And it would presuppose that then his lawyer would be in on the lie too. Would Merriman say to his lawyer, oh, by the way, I'm going to lie and tell the jury that this defendant said something that he didn't because I want to get this deal. He came clean in his deposition and said, I lied to everybody and I lied and I feel bad about it. And I want to clear my conscience because this is wrong. He didn't show up for the evidentiary hearing because he didn't want to be prosecuted for perjury. And then he was eventually found and just said, okay, no mas, I give up. I'm sorry. Yes, I'll give this deposition because I need to do the right thing. So I think I have hit all the points that I wanted to hit from in rebuttal. If the court has any other questions, I'd be happy to try to answer. Any questions from the other judges? No, thank you. No, we thank you both for your argument. And the case will be submitted and the clerk may adjourn court. This honorable court is now adjourned.